In The

# United States Court of Appeals

### For The Federal Circuit

## POLAR ELECTRO OY,

*Plaintiff – Appellant*,

v.

## AMER SPORTS WINTER & OUTDOOR,
## dba Suunto USA, SUUNTO OY,

*Defendants – Appellees*,

## FIRSTBEAT TECHNOLOGIES OY,

*Defendant.*

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE IN CASE
### NO. 1:11-CV-01100-GMS, JUDGE GREGORY M. SLEET.

––––––––––––––

## NON-CONFIDENTIAL REPLY BRIEF OF APPELLANT

––––––––––––––

**John P. Moran**
HOLLAND & KNIGHT LLP
**800 17th Street, N.W.**
**Washington, D.C.  20006**
**(202) 828-1848**

*Counsel for Appellant*

**Anthony Fuga**
HOLLAND & KNIGHT LLP
**131 South Dearborn Street**
**Chicago, Illinois  60603**
**(312) 715-5771**

*Counsel for Appellant*

**CONFIDENTIAL MATERIAL OMITTED**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

SUMMARY OF THE ARGUMENT ....................................................... 1

ARGUMENT ......................................................................................... 3

     I.     Delaware Courts Recognize Dual Jurisdiction As a Basis for Personal Jurisdiction Under Delaware's Long-Arm Statute ................ 3

     II.    Suunto's Delaware Contacts Satisfy Delaware's Long-Arm Statute under Delaware's Dual Jurisdiction Jurisprudence ................ 10

          A.     Suunto's Shipment of [    ] Accused Products to Delaware Retailers Establishes Suunto's Intent to Serve the Delaware Market ................................................... 11

          B.     Suunto's Ongoing Data Privacy Obligations to Delaware Purchasers Establish Suunto's Intent to Serve the Delaware Market ................................................... 12

          C.     Suunto's U.S. Distribution Agreement Establishes Suunto's Intent to Serve the Delaware Market ........................ 12

          D.     Suunto's Ownership of the Suunto.Com Website Portion of its Distribution Channel That Makes Accused Products Available to Delaware Residents Evidences an Intent to Serve the Delaware Market ....................................................... 13

          E.     Suunto's Ongoing Warranty Obligations to Delaware Customers Evidence an Intent to Serve the Delaware Market ................................................................... 15

     III.     Suunto's Delaware Contacts Satisfy All Articulations of the Supreme Court's Stream of Commerce Standard ............................... 16

CONCLUSION ........................................................................................... 18

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

## CONFIDENTIAL MATERIAL OMITTED

Plaintiff-Appellant, Polar Electro Oy, submits this reply brief with certain confidential material omitted from the public filing.  The confidential material includes both Suunto Oy's and Amer Sports Winter & Outdoor's confidential business, financial, operational, and marketing information.  The confidential material was obtained via discovery in the district court action and is protected under Delaware L.R. 26.2

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Belden Technologies, Inc. v. LS Corp.*,
    829 F. Supp. 2d 260 (D. Del. 2010) ......................................................*passim*

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
    21 F.3d 1558 (Fed. Cir. 1994) ...........................................................12, 17, 18

*Boone v. Oy Partek*,
    724 A.2d 1150 (Del. Super. 1997), *aff'd*,
    707 A.2d 765 (Del. Super. 1998)............................................................*passim*

*Celgard, LLC v. SK Innovation Co.*,
    792 F.3d 1373 (Fed. Cir. 2015) ....................................................................15

*Commisariat L'Energie Atomique v. Chi Mei Optoelectronics Corp.*,
    395 F.3d 1315 (Fed. Cir. 2005) .............................................................2, 9, 10

*Crane v. Home Depot, Inc.*,
    No. CIV.A.06-C-03-034RFS,
    2008 WL 2231472 (Del. Super. May 30, 2008)................................. 2, 6-7, 9

*Daimler AG v. Bauman*,
    __ U.S. __, 134 S. Ct. 746 (2014) ..................................................................4

*Eastman Chem. Co. v. AlphaPet Inc.*,
    No. CIV.A. 09-971-LPS-CJ,
    2011 WL 6004079 (D. Del. Nov. 4, 2011)......................................................7

*Goodyear Tires Operations, S.A. v. Brown*,
    __ U.S. __, 131 S. Ct. 2846 (2011) ...............................................................4

*Graphics Properties Holdings, Inc. v. ASUS Computer Int'l*,
    70 F. Supp. 3d 654 (D. Del. 2014) ...............................................7, 8, 12, 15

*ICT Pharm., Inc. v. Boehringer Ingelheim Pharm., Inc.*,
    147 F. Supp. 2d 268 (D. Del. 2001) ...........................................................7

*Intellectual Ventures I LLC v. Ricoh Company, Ltd.*,
    67 F. Supp. 3d 656 (D. Del. 2014) ..............................................................7

*Kloth v. Southern Christian University*,
    320 Fed. Appx. 113 (3d Cir. 2008)............................................................13

*Les Laboratoires Servier v. Wright*,
    755 A.2d 389 (Del. 2000)...............................................................................8

*Power Integrations, Inc. v. BCD Semiconductor Corp.*,
    547 F. Supp. 2d 365 (D. Del. 2008) ....................................................5, 7, 14

*Robert Bosch LLC v. Alberee Products, Inc.*,
    70 F. Supp. 3d 665 (D. Del. 2014) ...........................................................7, 8

*Round Rock Research LLC v. ASUTeK Computer Inc.*,
    967 F. Supp. 2d 969 (D.Del. 2013) ...........................................................7, 8

*Siemens Aktiengesellschaft v. LG Semicon Co.*,
    69 F. Supp. 2d 622 (D. Del. 1999) ...............................................................9

*W.L. Gore & Associates, Inc. v. Label Techs., Inc.*,
    No. 08-111-GMS,
    2009 WL 1372106 (D. Del. May 15, 2009) ..................................................7

*Wright v. American Home Products Corp.*,
    768 A.2d 518 (Del. Super. 2000), *appeal denied*,
    755 A.2d 389 (Del. 2000)......................................................................6, 8, 9

## STATUTES

Del. Code Ann. Title 3, § 3104 ................................................................5

Del. Code Ann. Title 3, § 3104(c)(1)................................................*passim*

Del. Code Ann. Title 3, § 3104(c)(4)................................................*passim*

iv

CONFIDENTIAL MATERIAL OMITTED

# SUMMARY OF THE ARGUMENT

Polar's Opening Brief explained how Suunto's contacts with Delaware satisfy both Delaware's long-arm statute under Delaware's dual jurisdiction theory of stream of commerce as well as Due Process. Suunto's responsive brief ignores critical facts establishing personal jurisdiction over it in Delaware under all articulations of the Supreme Court's stream of commerce test. Suunto does not controvert that it: (1) packaged and shipped [    ] accused products from Finland to Delaware retailers; (2) has ongoing data privacy obligations to Delaware purchasers; (3) entered into a U.S. distribution agreement to supply its products to the U.S., expecting [                    ]; and (4) owns the suunto.com website portion of its distribution channel that makes Accused Products available to Delaware residents. These activities, individually and collectively, establish that: Delaware has personal jurisdiction over Suunto; Suunto's contacts with Delaware constitute "something more" than merely placing Accused Products into the stream of commerce that fortuitously reach Delaware, satisfying all articulations of the Supreme Court's stream of commerce test.

Suunto asserts a patently incorrect view of Delaware law, contending that Delaware does not recognize dual jurisdiction under the Delaware long-arm statute. In Suunto's view, Polar must show general jurisdiction over Suunto. Delaware state law, Delaware District Court application of that law, and this

Court's prior analysis of Delaware law in *Commisariat L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1319 (Fed. Cir. 2005) are all contrary to Suunto's contention.

Delaware's dual jurisdiction theory of its long-arm statute is established and uniformly applied by Delaware state and federal courts, with the exception of one district court opinion noted below. Neither Delaware state law nor Federal Constitutional jurisprudence has changed since *Commisariat L'Energie Atomique*. In fact, it has been augmented by an additional Delaware court case that applied the dual jurisdiction analysis of Delaware's long-arm statute in the established manner. *See Crane v. Home Depot, Inc.*, No. CIV.A.06-C-03-034RFS, 2008 WL 2231472, at *4 (Del. Super. May 30, 2008) (unpublished).

Moreover, while this Court in *Commisariat L'Energie Atomique* questioned whether Delaware's dual jurisdiction theory required a showing of intent to serve the Delaware market, the evidence here renders this question moot. The record reflects ample evidence to establish both Suunto's intent to serve the Delaware market and that this cause of action arises from Suunto's contacts with Delaware. Thus, Polar satisfied its burden of making a *prima facie* showing that Delaware has personal jurisdiction over Suunto under Delaware's long-arm statute and all articulations of the Supreme Court's stream of commerce test.

2

# ARGUMENT

## I.     Delaware Courts Recognize Dual Jurisdiction As a Basis for Personal Jurisdiction Under Delaware's Long-Arm Statute

Delaware has personal jurisdiction over Suunto under Delaware's dual jurisdiction theory of its long-arm statue, as initially applied by the Delaware Superior Court in *Boone v. Oy Partek*, 724 A.2d 1150 (Del. Super. 1997), *aff'd*, 707 A.2d 765 (Del. Super. 1998).  Polar's Opening Brief addressed the Delaware state cases discussing and applying the dual jurisdiction theory of personal jurisdiction under Delaware's long-arm statute.  (*See*, *e.g.*, Polar Opening Br., pp. 16-21).

Without addressing those case-dispositive points, Suunto argues, citing *Belden Technologies, Inc. v. LS Corp.*, 829 F. Supp. 2d 260, 266 (D. Del. 2010), that Polar must show general jurisdiction exists over Suunto.  (Suunto Br., pp. 17-19, 20-22).  Suunto relies on *Belden's* background analysis of the individual sections of Delaware's long-arm statute, not that court's discussion and application of Delaware's dual jurisdiction.  As its name suggests, dual jurisdiction rests on dual aspects of the Delaware long-arm statute, specifically §§ 3104(c)(1) and (c)(4). *See*, *e.g.*, *Belden*, 829 F. Supp. 2d at 267.  Thus, Suunto's reliance on

*Belden's* background analysis of the <u>individual</u> sections of Delaware's long-arm statute misses the relevant aspects of *Belden*.[1]

In the portion of the *Belden* opinion that is relevant here, the court quoted *Boone* (the leading Delaware case developing dual jurisdiction), which listed the factors required to establish personal jurisdiction under dual jurisdiction:

> the enumerated activities in [subsection (4) ] should be analyzed to determine whether there is an intent or purpose on the part of the [non-resident] to serve the Delaware market with its product. Likewise, when analyzing [subsection] (1) it is not important that the [non-resident] itself act in Delaware. Instead, if the intent or purpose on behalf of the [non-resident] to serve the Delaware market **results in the introduction of the product to this State and plaintiff's cause of action arises from injuries caused by that product,** this section is satisfied.

*Id.* (citing *Boone*, 724 A.2d at 1158) (emphasis in original).  Based on *Boone's* analysis of the Delaware long-arm statute §§ 3104(c)(1) and (c)(4) under dual

---

[1]  Suunto's reliance on *Goodyear Tires Operations, S.A. v. Brown*, __ U.S. __, 131 S. Ct. 2846 (2011) is also unavailing.  *Goodyear* addressed general jurisdiction and concluded "North Carolina is not a forum in which it would be permissible to subject petitioners to general jurisdiction," *Id.* at 2857.  Because all of the acts occurred outside of the forum, the North Carolina long-arm statute construed in *Goodyear* did not provide jurisdiction under a stream of commerce theory. *Id.* at 2855.  *Goodyear's* general jurisdiction analysis and holding does not impact Delaware's dual jurisdiction theory of personal jurisdiction as applied by Delaware state and federal courts.  Nor does the other Supreme Court general jurisdiction case, *Daimler AG v. Bauman*, __ U.S. __, 134 S. Ct. 746, 758 (2014).  *Daimler* concerned "the authority of a court in the United States to entertain a claim brought by foreign plaintiffs against a foreign defendant based on events occurring entirely outside the United States." *Id.* at 750.  *Daimler* concluded that there was no general personal jurisdiction in the forum where jurisdiction rested on a non-party subsidiary's distribution of products not related to the cause of action. *Id.* at 752, 761-62.

jurisdiction, the *Belden* court concluded "the dual jurisdiction analysis requires a

showing of both: (1) an intent to serve the Delaware market; and (2) that this intent

results in the introduction of the product into the market and that plaintiff's cause

of action arises from injuries caused by that product." *Id.* at 267-68 (citing *Power*

*Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 372 (D. Del.

2008). The *Belden* court also specifically noted that "[a] court 'must take great

care' not to overemphasize either prong in a dual jurisdiction analysis." *Id.* at 287

(citing *Boone*, 724 A.2d at 1158). In short, Suunto's reliance on *Belden's*

background analysis of the <u>individual</u> sections of Delaware's long-arm statute

misses the fundamental dual jurisdiction factors recognized and applied by the

*Belden* court. The dual jurisdiction factors do not support Suunto's contention that

Polar must establish general jurisdiction over Suunto.

Suunto is also incorrect in arguing that *Boone* is a general jurisdiction case.

(Suunto Br., p. 20). *Boone* began its jurisdictional analysis by recognizing that for

"jurisdictional purposes, [defendant] is similar to a manufacturer who places

products in the stream of commerce … This theory rests on a <u>specific rather than a</u>

<u>general jurisdiction rationale</u>." *Id.* at 1156 (emphasis added). The court explained

that this specific, rather than general, rationale posed a problem as the stream of

commerce theory "does not fit neatly into any section of § 3104." *Id.* at 1157-58

(discussing how stream of commerce theory does not mandate that the

manufacturer itself act in Delaware as required under subsection (c)(1) and, as a specific jurisdiction theory, does not consider timing of contact or allow removal as required under (c)(4)). To reconcile the stream of commerce theory with the Delaware statutory framework, the *Boone* court adopted the dual jurisdiction concept as a "fitting solution" that "best encompasses all of the intricacies of the stream of commerce theory, taking into account the relationship between the manufacturer and the forum and the relationship between the controversy and the forum." *Id.*

*Boone* applied its two dual jurisdiction factors and found § 3104(c)(4) satisfied by the defendant's intent to serve the Delaware market, and § 3104(c)(1) satisfied by the product's presence in Delaware, stating:

> This Court concludes that Delaware's long arm statute, *via* §§ 3104(c)(1) and (c)(4), provides for the exercise of jurisdiction over [defendant]. Under § 3104(c)(4) [defendant] exhibited an intent and purpose to serve the Delaware market.
> . . .
> Additionally, it is clear that § 3104(c)(1) is satisfied in this instance. [Defendant's] actions resulted in asbestos being shipped into this State at the rate of 50 tons per month over the course of 10 years and plaintiffs' claims arise out of their exposure to this asbestos.

*Id.* at 1158.

The *Boone* dual jurisdiction factors have been applied in other Delaware state court cases, namely, *Wright v. American Home Products Corp.*, 768 A.2d 518 (Del. Super. 2000), *appeal denied*, 755 A.2d 389 (Del. 2000), and *Crane v. The*

6

*Home Depot, Inc.*, 2008 WL 2231472 (Del. Super. 2008) (unpublished). The factors have also been uniformly applied by the federal District court in Delaware, with one exception. *See Power Integrations*, 547 F. Supp. 2d at 372 n.4; *Belden*, 829 F. Supp.2 d at 267; *Intellectual Ventures I LLC v. Ricoh Company, Ltd.*, 67 F. Supp. 3d 656, 661 (D. Del. 2014);[2] *Robert Bosch LLC v. Alberee Products, Inc.*, 70 F. Supp. 3d 665, 675 (D. Del. 2014), *Graphics Properties Holdings, Inc. v. ASUS Computer Int'l*, 70 F. Supp. 3d 654, 662 (D. Del. 2014); *Eastman Chem. Co. v. AlphaPet Inc.*, No. CIV.A. 09-971-LPS-CJ, 2011 WL 6004079, at *15-16 (D. Del. Nov. 4, 2011); *W.L. Gore & Associates, Inc. v. Label Techs., Inc.*, No. 08-111-GMS, 2009 WL 1372106, at *3 (D. Del. May 15, 2009); *ICT Pharm., Inc. v. Boehringer Ingelheim Pharm., Inc.*, 147 F. Supp. 2d 268, 271 (D. Del. 2001).

The lone exception to the uniform state and federal jurisprudence on dual jurisdiction is *Round Rock Research LLC v. ASUTeK Computer Inc.*, 967 F. Supp. 2d 969 (D. Del. 2013). Despite agreeing with *Belden's* analysis of dual jurisdiction under Delaware state law, *Round Rock* ruled that it was not bound by the Delaware state court decisions. *Round Rock*, 967 F. Supp. 2d at 977 ("I agree

---

[2] Suunto is incorrect when it states that *Intellectual Ventures* "rejected the 'stream of commerce' argument." (Suunto Br., p. 22 n.4). *Intellectual Ventures* specifically addressed personal jurisdiction under Delaware's dual jurisdiction theory of stream of commerce. *Intellectual Ventures*, 67 F. Supp. 3d at 661. The court found no personal jurisdiction because the defendant's intent to serve the Delaware market was lacking. *Id.* ("There is no evidence in the record that RCL has the requisite intent to sell Ricoh products in Delaware."). In addition, unlike Suunto, the defendant did not ship its products to Delaware.

with my colleagues that this is the conclusion [dual jurisdiction arises from partial satisfaction of §§ 3401(c)(1) and (c)(4)] to be drawn from the Superior Court cases."); (*see also* Polar's Opening Br., pp. 19-21).

Subsequent Delaware district court cases have declined to follow the *Round Rock* court's approach. *See Graphics Properties*, 70 F. Supp. 3d at 661-62; *Robert Bosch*, 70 F. Supp. 3d at 674.  Both *Graphics Properties* and *Robert Bosch* looked to the Delaware state court cases and held that, notwithstanding *Round Rock*, "the Delaware Supreme Court, if faced with the issue, would hold that the 'stream-of-commerce' theory does provide a basis for personal jurisdiction under Delaware law, even though the theory is not expressly authorized by Delaware's long-arm statute." *Graphics Properties*, 70 F. Supp. 3d at 662; *Robert Bosch*, 70 F. Supp. 3d at 675.

Both *Graphics Properties* and *Robert Bosch* explicitly noted that the Delaware Supreme Court has declined to disturb this settled jurisprudence. *Graphics Properties*, 70 F. Supp. 3d at 661 (citing *Boone*, 724 A.2d at 1156; *Wright*, 768 A.2d at 531); *Robert Bosch*, 70 F. Supp. 3d at 674-75.  Both courts cited *Boone*, which Polar discussed in its Opening Brief at pp. 19-20.  *Id*.  Both courts also cited *Wright*, where the appeal placed the issue of personal jurisdiction under Delaware's dual jurisdiction squarely before the Delaware Supreme Court. *Id.*; *Les Laboratoires Servier v. Wright*, 755 A.2d 389 (Del. 2000) (Table).  In

8

*Wright*, two French defendants moved to dismiss for, among other things, lack of personal jurisdiction. 768 A.2d at 520. In finding personal jurisdiction over the French defendants, the *Wright* court began its analysis stating "this Court finds the earlier decision of *Boone v. Oy Partek, Ab*, as persuasive." *Id.* at 529. After analyzing the *Boone* factors noted above, the *Wright* court found "the dual jurisdictional holding in *Boone* and the dual jurisdictional *dicta* in *LaNuova* demonstrate that the French defendants in this case are subject to jurisdiction under §§ 3104(c)(1) and (c)(4)." *Id.* at 530. The *Wright* court concluded its analysis of dual jurisdiction stating "the Court finds that §§ 3401(c)(1) and (c)(4) provide a basis for jurisdiction over the French defendants." *Id.* at 531. The French defendants petitioned the Delaware Supreme Court to accept an interlocutory appeal of the Superior Court's denial of their motion to dismiss for among other things, lack of personal jurisdiction. *Wright*, 755 A.2d at *1. The Delaware Supreme Court declined to review the issue, leaving the dual jurisdiction jurisprudence undisturbed. *Id.*

Furthermore, in *Commisariat L'Energie Atomique*, this Court discussed the stream of commerce theory under Delaware law. 395 F.3d at 1320 (citing *Siemens Aktiengesellschaft v. LG Semicon Co.*, 69 F. Supp. 2d 622, 626-27 (D. Del. 1999)). This Court questioned whether Delaware's dual jurisdiction standard required a showing of intent to serve the Delaware market. Both the *Wright* and *Crane*

9

decisions indicate that intent to serve the Delaware market is a factor under Delaware's dual jurisdiction theory of personal jurisdiction.  Regardless of whether intent is a required factor, Polar has established, at least under a *prima facie* standard, Suunto's intent to serve the Delaware market, a showing that Suunto leaves largely uncontroverted.  (*See* Polar Opening Br., pp. 21-33).  To decide this case, this Court therefore need not definitively answer its original *Commisariat* question concerning whether intent is a requisite factor.

## II.     Suunto's Delaware Contacts Satisfy Delaware's Long-Arm Statute under Delaware's Dual Jurisdiction Jurisprudence

Suunto's Delaware contacts satisfy Delaware's long-arm statute under Delaware's dual jurisdiction theory of stream of commerce.  (Polar Opening Br., pp. 21-33).  Instead of addressing the array of Suunto's Delaware contacts, Suunto incorrectly contends that Polar must establish that Delaware has general jurisdiction over Suunto.[3]  Polar's Opening Brief explained how the intent prong of Delaware's dual jurisdiction is satisfied, and Suunto does not even attempt to controvert Polar on this pivotal point.  There is no controversy that the second prong of Delaware's dual jurisdiction is also satisfied: this case arises from alleged

---

[3]   Polar addressed Suunto's general jurisdiction argument in Section I, *supra*. There is no merit to Suunto's contention that Delaware does not have personal jurisdiction over it because of what Suunto does not do in Delaware.  Both Delaware's dual jurisdiction theory of stream of commerce and Due Process recognize that an entity's direct and indirect contacts with the forum guide personal jurisdiction.  As explained herein and in Polar's Opening Brief, Delaware's personal jurisdiction over Suunto rests on Suunto's array of Delaware contacts; it does not rest on what Suunto contends it does not do in Delaware.

10

**CONFIDENTIAL MATERIAL OMITTED**

patent infringement in Delaware. (JA8). Thus, Polar has made at least a *prima facie* showing that Delaware has personal jurisdiction over Suunto under Delaware's dual jurisdiction theory of personal jurisdiction of the Delaware long-arm statute.

More particularly, Suunto does not controvert several critical facts establishing dual jurisdiction, including Suunto's: (1) shipping [    ] accused products from Finland to Delaware retailers (JA340-341; JA293-294; JA414-415); (2) ongoing data privacy obligations to Delaware purchasers (JA131); (3) U.S. distribution agreement for supplying Accused Products to the U.S., expecting [

] (JA283-284); and (4) ownership of the suunto.com website portion of its distribution channel that makes Accused Products available to Delaware residents.[4] (JA283).

### A. Suunto's Shipment of [  ] Accused Products to Delaware Retailers Establishes Suunto's Intent to Serve the Delaware Market

Jurisdictional discovery established that Suunto shipped [    ] Accused Products to Delaware retailers. (Polar Opening Br., p. 8, pp. 28-30). Suunto's brief does not address or controvert this fact. Suunto's shipping of [    ] Accused Products to Delaware retailers, by itself, establishes Suunto's intent to serve the

---

[4]    Suunto contends that [                                                    ] that links to" Suunto's website. (*See*, *e.g.*, Suunto's Br., p. 7). The record, however, suggests [                                                    ] "take[s] care of these on-line sales." (JA285-86).

CONFIDENTIAL MATERIAL OMITTED

Delaware market, and that Suunto is serving the Delaware market. *See, e.g.*,

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564-65 (Fed. Cir.

1994) (finding intent where defendants purposefully shipped accused products into

the forum and the cause of action arose from those activities, because "[n]o more is

usually required" to establish personal jurisdiction); *Belden*, 829 F. Supp. 2d at 268

n.9 (sales of four products through a distributor demonstrates an intent to serve the

Delaware market); *Graphics Properties*, 70 F. Supp. 3d at 664 (defendant's

purposeful shipping of accused products through an established distribution

channel and the cause of action arising out of the activity establishes personal

jurisdiction).

### B.    Suunto's Ongoing Data Privacy Obligations to Delaware Purchasers Establish Suunto's Intent to Serve the Delaware Market

Suunto has ongoing data privacy obligations to Delaware purchasers.  (Polar

Opening Br., pp. 30-31).  Suunto's brief does not address or controvert this fact.

Suunto's ongoing data privacy obligations to Delaware residents, by itself,

establishes Suunto's intent to serve, and that it is serving the Delaware market by

safeguarding Delaware residents' personal information.

### C.    Suunto's U.S. Distribution Agreement Establishes Suunto's Intent to Serve the Delaware Market

Suunto's U.S. distribution agreement establishes an intent to serve the

Delaware market, including that Suunto [                                                    ].

**CONFIDENTIAL MATERIAL OMITTED**

(Polar Opening Br., pp. 5-7, 16-17, 22-25; JA283-284).  Again, Suunto's brief does not address Polar's showing.  The distribution agreement and Suunto's expectation that [                                                      ] establish Suunto's intent to serve, and that it is serving, the Delaware market.  (*See*, *e.g.*, Polar Opening Br., pp. 16-17).

### D.    Suunto's Ownership of the Suunto.Com Website Portion of its Distribution Channel That Makes Accused Products Available to Delaware Residents Evidences an Intent to Serve the Delaware Market

Suunto's ownership of the suunto.com website portion of its distribution channel that makes Accused Products available to Delaware residents establishes an intent to serve the Delaware market.[5]  (Polar Opening Br., pp. 5-7, 16-17, 22-25).  Suunto does not controvert three operative facts supporting its intent to serve the Delaware market via the Suunto-owned website portion of its distribution channel:

(1)  Suunto admits that it owns the website www.suunto.com (Suunto Br., p. 7; Suunto's website Terms and Conditions; JA63 ¶ 16e; JA126);

---

[5]  Suunto's misstates *Kloth v. Southern Christian University*, 320 Fed. Appx. 113 (3d Cir. 2008) (unpublished).  *Kloth* does not address dual jurisdiction, and involves greatly different facts. *Id.* at 115-18.  The plaintiff, Kloth, resided in Connecticut and took online courses at a school in Alabama. *Id.* 117.  The plaintiff brought suit in Delaware, but only temporarily resided there, without ever changing her address.  *Id.*  None of these facts are germane to this case.  In addition, the website at issue in *Kloth* included a feature ("Blackboard") that facilitated communication between students, as well as between students and professors. *Id.* at 116.  No products were purchased from the website as alleged by Suunto.  (Suunto Br., p. 19 n.3).  In contrast, Suunto's website specifically identifies Delaware retailers, and it is undeniably an integral portion of Suunto's distribution channel.

(2)  Suunto does not dispute that Suunto's website Terms and Conditions specifies that its use "constitutes an agreement between you [the user] and *Suunto Oy*; *Id*. and

(3)  Suunto does not dispute that Suunto is the copyright owner of the content provided on Suunto's website, and is the controller of personal data provided through Suunto's website.  *Id*.[6]

The Terms and Conditions of Suunto's website establish that Suunto owns the content (e.g., local dealers) provided on its website, regardless of the source of information on Suunto's website, and that users enter into an agreement with Suunto when they use Suunto's website.  (JA126).  It is undisputed that Suunto's website identifies Delaware retailers.  The Suunto-owned website portion of Suunto's distribution channel expressly evidences Suunto's intent to serve the Delaware market.  Suunto cites no case that requires a distribution channel to serve only the forum at issue before the distribution channel evidences an intent to serve the forum's market.  Simply because Suunto has an intent to serve other markets through its distribution channel does not erase its irrefutable intent to serve the Delaware market.  *Power Integrations*, 547 F. Supp. 2d at 373 ("[A] non-resident firm's intent to serve the United States market is sufficient to establish an intent to

---

[6]  Suunto notes ASWO maintains the dealer locator feature of the Suunto website. (Suunto Br., p. 7).  Suunto's contracting with ASWO for this service does nothing to negate the operative uncontroverted facts listed above.

serve the Delaware market, unless there is evidence that the firm intended to exclude from its marketing and distribution efforts some portion of the country that includes Delaware."); *Graphics Properties*, 70 F. Supp. 3d at 662.

### E.    Suunto's Ongoing Warranty Obligations to Delaware Customers Evidence an Intent to Serve the Delaware Market

Suunto's ongoing warranty obligations to Delaware customers establish an intent to serve the Delaware market.  (Polar Opening Br., pp. 5-7, 16-17, 22-25). Suunto disputes whether it has ongoing warranty obligations to Delaware customers.  Suunto, however, acknowledges that the personal jurisdiction standard of proof applicable here is a *prima facie* showing.  (Suunto Br., p. 13).  Under the *prima facie* standard, all factual disputes must be resolved in Polar's favor. *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015). Suunto's ongoing warranty obligation to Delaware customers is, at the very least, a contested fact that should be resolved in Polar's favor. *Id.*  Suunto's ongoing warranty obligations to Delaware customers show its intent to serve the Delaware market.  In short, Suunto's Delaware contacts, individually or collectively, demonstrate Suunto's intent to serve the Delaware market.

**CONFIDENTIAL MATERIAL OMITTED**

### III.    Suunto's Delaware Contacts Satisfy All Articulations of the Supreme Court's Stream of Commerce Standard

Suunto's contacts with Delaware satisfy Due Process under all articulations of the Supreme Court's stream of commerce test.  (Polar Opening Br., pp. 33-39).  Suunto does not address those contacts.  (Suunto Br., § I.B., pp. 22-27).  Instead, after discussing general jurisdiction (*e.g.*, *Helicopteros*) and arguing – despite settled law to the contrary – that Justice O'Connor's more stringent stream of commerce standard is controlling (Suunto Br., pp. 22-26), Suunto simply asserts "Polar never furnished proof of 'something more'" (*Id*. at 26) and "Suunto Oy has no role in the importation, marketing, repair, or sale of the products in the U.S." *Id*.

The record, which Suunto does not refute, shows otherwise.  Suunto works with ASWO to provide Accused Products to the U.S. and to Delaware specifically, as demonstrated by:

(1) Suunto's distribution agreement with ASWO and its obligations under that agreement (*See*, *e.g.*, JA347);

(2) Suunto discussing sales and marketing plans with [      ] employees related to selling and marketing Suunto products in the U.S., including Delaware (JA238; *see also* Polar Opening Br., p. 6);

(3) Suunto providing marketing input to[      ] (JA238-39);

**CONFIDENTIAL MATERIAL OMITTED**

(4) Suunto's shipping of Accused Products to Delaware (*see* Polar Opening

Br., pp. 8, 28-30);[7]

(5) Suunto fully expecting [                                        ] (JA283-284); and

(6) Suunto's ongoing data privacy obligations to Delaware purchasers

(JA131).

Furthermore, as discussed in Section II.E above, Suunto's ongoing warranty

obligations to Delaware customers together with Suunto's other contacts with

Delaware discussed in Section II, demonstrate that Suunto does "something more"

than simply put a product into the stream of commerce that fortuitously reaches

Delaware.  (*See* Polar Opening Br., pp. 35-39).  At the very least, Suunto's

uncontroverted shipping of [     ] Accused Products to Delaware establishes

"something more."  This Court therefore need not take a position on the Supreme

Court's articulations of the stream of commerce standard.

Suunto's brief does not address Polar's showing that Due Process is satisfied

under this Court's precedent, *Beverly Hills Fan Co.*, 21 F.3d at 1564-65.  (Suunto's

Br., pp. 27-29).  Instead, ignoring Polar's showing, Suunto asserts that "Suunto and

ASWO do ***not*** 'act in consort.'"  *Id.* at 28 (emphasis in original).  Suunto then

summarily concludes "Polar's 'paltry' complaint allegations cannot support the

---

[7] Suunto asserts that [           ] shipping.  (Suunto Br., p. 6).  Suunto cites no case
suggesting the shipping [     ] is relevant.  Regardless, the record citations provided
by Suunto, (JA272, JA284), do not support its assertion.

**CONFIDENTIAL MATERIAL OMITTED**

exercise of jurisdiction over Suunto, and the record facts fail to do so as well."

(Suunto Br., p. 29).  As explained above and in Polar's Opening Brief, Suunto

works with ASWO via their agreement to provide Accused Products to the U.S.

and to Delaware specifically.  It is uncontested that Suunto purposefully shipped

the Accused Products to Delaware through its established distribution channel, and

that this case arises from Suunto's activities.  In short, Suunto, acting with ASWO,

placed the Accused Products in the stream of commerce, expecting [

                    ], and has ongoing obligations to Delaware customers.  Suunto's

contacts with Delaware therefore satisfy Due Process. *Beverly Hills Fan*, 21 F.3d

at 1566.[8]

## CONCLUSION

Suunto does not dispute operative facts supporting a *prima facie* showing

that its contacts satisfy Delaware's dual jurisdiction, this Court's precedents and all

articulations of the Supreme Court's stream of commerce test.  Appellant Polar

therefore respectfully requests that the district court's determination of no personal

jurisdiction be reversed.

---

[8]   Suunto alleges Polar asserts jurisdiction based on agency.  (Suunto Br., pp. 29-
30).  Suunto's Delaware contacts render an agency argument unnecessary.  As
explained herein and in Polar's Opening Brief, while Suunto and ASWO are
separate companies, they work together to supply Suunto's products to the U.S.
market and to Delaware specifically.  For example, as obligated [
                              ], Suunto fulfills orders, and has shipped [     ] Accused
Products to Delaware retailers.  (*See*, *e.g.*, Polar Opening Br., pp. 8, 28-30).

January 4, 2016

Respectfully submitted,

/s/ *John P. Moran*

Anthony Fuga

John P. Moran

HOLLAND & KNIGHT LLP

HOLLAND & KNIGHT LLP

131 South Dearborn Street

800 17th Street, N.W.

Chicago IL 60603

Washington, D.C. 20006

(312) 715-5771

(202) 828-1848 (Telephone)

anthony.fuga.@hklaw.com

(202) 955-5564 (Facsimile)

john.moran@hklaw.com

*Attorneys for Plaintiff-Appellant, Polar Electro Oy*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 4th day of January, 2016, I caused this Non-Confidential Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Jeffrey A. Key
KEY & ASSOCIATES
321 North Clark Street, Suite 500
Chicago, Illinois  60654
(321) 560-2148

*Counsel for Appellees*

/s/ *John P. Moran*
*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P.
        28.1(e)(2) or 32(a)(7)(B) because:

        [ X ] this brief contains [*4,310*] words, excluding the parts of the brief
        exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

        [     ] this brief uses a monospaced typeface and contains [*state the number
        of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P.
        32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P.
        32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

        [ X ] this brief has been prepared in a proportionally spaced typeface using
        [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

        [     ] this brief has been prepared in a monospaced typeface using [*state
        name and version of word processing program*] with [*state number of
        characters per inch and name of type style*].


Dated: January 4, 2016                      /s/ *John P. Moran*
                                            *Counsel for Appellant*